UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JOSEPH SIMMONS, JR, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, acting Commissioner of Social Security, <br><br> Defendant. | No. 1:21-cv-00779-GSA <br><br> **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** <br><br> **(Doc. 17, 18)** |

### I.     Introduction

Plaintiff John Joseph Simmons, Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  *See* Docs. 17, 18.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

### II.     Factual and Procedural Background[2]

On December 20, 2016 Plaintiff applied for disability insurance benefits alleging disability as of April 25, 2016.  The Commissioner denied the application initially on March 10, 2017, and on reconsideration on August 16, 2017. AR 144, 158.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 5, 2019. AR 29–83.  On May 17, 2019 the ALJ issued a decision denying Plaintiff's application. AR 12–28.  The Appeals Council denied review on July 9, 2019. AR 1–6.  Plaintiff filed a complaint in this Court on August 23, 2019 and

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 21 and 22.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed.  Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

filed an opening brief after which the matter was remanded to the agency for further proceedings pursuant to stipulation on July 27, 2020.  *See* 1:19-CV-1162-EPG.

Pursuant to the Appeals Council's order on remand, the ALJ was to give proper consideration to: Plaintiff's treating podiatrist's opinion, his subjective complaints, lay witness evidence, and Plaintiff's mental health impairments, among other things. AR 1333–35.  On remand the ALJ held an additional hearing on February 23, 2021.  AR 1258–81.  Thereafter, on March 5, 2021 the ALJ issued a second decision denying Plaintiff's application. 1233–57.  Plaintiff filed this appeal on May 14, 2021.  Doc. 1.

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

2

1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and his date last insured of December 31, 2016. AR 1239. At step two the ALJ found that Plaintiff had the following severe impairments: chronic bilateral ankle sprains, bilateral foot bursitis, and bilateral plantar fasciitis. AR 1239. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: hypertension, gastroesophageal reflux disease (GERD), eczema, and anxiety. AR 1240. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically

equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1242–43.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. 404.1567(a) without any non-exertional limitations.  AR 1243–49.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as a mail handler, protective signal superintendent or advertising sales representative, all of which required the capacity for light exertional work.  AR 1249–50.  At step five the ALJ found that considering his age, education and work experience, a finding of non-disability was directed by the applicable grid rule, Medical-Vocational Rule 201.28.  AR 1250.  Accordingly, the ALJ concluded that Plaintiff was not disabled between the alleged onset date and his date last insured of December 31, 2016.  AR 1251.

### V. Issues Presented

Plaintiff generally asserts that the RFC was not supported by substantial evidence,

#### A. RFC

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c).

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

**2.     Analysis**

Plaintiff's analysis begins at page 15 of his 19 page brief. Plaintiff's argument distills down to one essential contention: that the testimonial evidence, objection medical evidence, and opinion evidence establishes that Plaintiff must frequently elevate his legs, a work-preclusive limitation the ALJ rejected without providing sufficient reasoning.

A reasonable effort at identifying harmful error here might consist of: 1) quoting, citing

and/or paraphrasing the testimonial and opinion evidence explaining why he needs to elevate his legs, when he needs to elevate them, and for how long they must remain elevated; 2) quoting, citing and/or paraphrasing the reasoning the ALJ offered for rejecting the leg elevation limitation; and 3) explaining why the ALJ's reasoning fell short of the applicable legal standards.  Plaintiff's analysis does not proceed in this fashion.  The 4-page argument consists of 15 short paragraphs which will be addressed in turn.

At paragraph 1 Plaintiff emphasizes that he has consistently maintained he is unable to work due to a myriad mental and physical impairments, Plaintiff specifically underscores his testimony that he suffers "bilateral lower extremity pain and swelling which necessitates that he elevate his lower extremities in such a way that he would be incapable of performing competitive employment as was testified to by the vocational expert at the hearing in this matter."  Br. at 15 (citing AR78, 79).

In paragraphs 2, 3, and 5 of his argument,  Plaintiff recites the legal standards that apply to the rejection of a claimant's testimony.  Br. at 15–16.

Paragraph 4 of his argument offers only his conclusion that the ALJ's analysis fell short of the applicable standard with no citation, quotation, or summary of that analysis or any attempted explanation as to why it fell short.  Br. at 16.  In an earlier section labelled "Commissioner's Findings and Conclusions,"  Plaintiff provided a summary of the ALJ's findings.  Br. at 12–14.  The only analytical component of that summary however was Plaintiff's observation that the ALJ misstated the RFC from the prior decision, which does not address the supportability of the RFC the ALJ assessed in this decision, nor does it address the sufficiency of the ALJ's reasoning for excluding the dispositive leg elevation limitation.  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008). Plaintiff fails to adequately provide a reason or basis to conclude that the ALJ's misstatement of the RFC from the prior decision was in any way consequential to the ultimate nondisability determination the ALJ reached in her current decision.

Paragraph 6 of Plaintiff's argument emphasizes the existence of objective medical evidence of his ankle impairments. Br. at 16 (citing AR 680-84, 691). There is no dispute that Plaintiff has these impairments, as found by the ALJ. The dispute concerns the testimonial and opinion evidence that he needs to elevate his legs 10 minutes per hour, and the ALJ's reasoning for rejecting that limitation. "The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

Paragraph 6 also states that "records reflect that Plaintiff is often off of his feet elevating his lower extremities." Br. at 16 (citing AR 547). Plaintiff cites the medical records in an effort to establish that fact objectively. However, the cited page of the record is Plaintiff's subjective history of his present illness as transcribed by his treating provider. Making that statement to his treating provider in a clinical context does not transform the statement into objective evidence that he must be off his feet "often" to elevate his legs. Again, there is no dispute that Plaintiff maintained he must elevate his feet. At issue is the ALJ's reasoning for rejecting that limitation. Moreover, even if the cited record was presumed true as to the matter it addresses, establishing that he elevated his feet "often", is not sufficiently specific to affect the outcome here. The work preclusive limitation at issue here, according to the VE, is leg elevation 10 minutes per hour. AR 78–79. Thus, the cited record neither objectively nor subjectively supports the dispositive limitation in question.

Paragraph 6 further asserts that "Plaintiff's treating physicians have limited him to sedentary work and suggested that he needs to elevate his lower extremities at least 10 minutes per hour." Br. at 16 (citing AR727). The cited exhibit contains a work status report in connection with

8

a worker's compensation claim in which his podiatrist, Dr. Leavitt, opined he would be off work from April 26, 2016 through May 24, 2016, and thereafter would be on modified work activity through July 4, 2016 during which time he was to elevate his feet every 10 minutes. AR 727. Indeed, that limitation, *if* adopted, would have warranted a partial disability finding.

However, Defendant contends that Dr. Leavitt's opinion, even if credited as true, would not establish a disabling impairment as Plaintiff's physician did not opine the limitation would last 12 months. Resp. at 5. Although Plaintiff did not file a reply brief addressing this issue, it is worth noting that Defendant conflates the impairment with the limitations attributable to that impairment. The 12-month durational requirement applies to the medically determinable impairment, not to the limitation attributable to that impairment. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as "inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.") (emphasis added).

Plaintiff indisputably had medically determinable ankle impairments that were severe and lasted, or could be expected to last at least 12 months, namely chronic bilateral ankle sprains, bursitis, and plantar fasciitis, as the ALJ found. AR 1239–40. Had the ALJ concluded otherwise Plaintiff's claim would have failed at step two. The question at issue here is the nature of the limitations attributable to those medically determinable ankle impairments and the extent to which those limitations impacted Plaintiff's ability to perform work functions. This issue was addressed when formulating the RFC. Thus, had the ALJ adopted Dr. Leavitt's opinion that Plaintiff would have to elevate his legs 10 minutes per hour due to his ankle impairments (a work preclusive limitation according to the VE), only a partial finding of disability would have been justified. Specifically, only for the 2 month period of time which Dr. Leavitt opined the leg-elevation limitation would apply. Importantly however, as explained below, the ALJ did not adopt Dr.

Leavitt's opinion regarding the leg elevation limitation because the ALJ determined the opinion was not supported.

Plaintiff's analysis at paragraphs 7, 8 and 9 simply set forth the applicable standard for rejecting a physician's opinion, without explaining how that standard applies. Br. at 16–17.

Paragraph 10 offers a one sentence conclusion that the ALJ improperly rejected all pertinent evidence concerning his lower extremity edema and associated limitations. Br. at 17.

Paragraph 11 asserts that, "The Administrative Law Judge has failed to properly consider not only the objective medical evidence including MRI evidence but he has also rejected the opinions of treating physicians and Plaintiff's own subjective statements of record regarding his significant impairments and resulting limitations." Br. at 17. Paragraph 11 reiterates that the ALJ's purported failure was harmful given the VE's testimony. Plaintiff cites no specifics nor does he acknowledge the ALJ's pertinent discussion. The ALJ explicitly discussed the MRI evidence, the physician's advice to elevate his legs hourly, and his testimony concerning the same and explained her reasoning for rejecting that limitation, as will be addressed below. AR 1244–47. Plaintiff does not explain how the ALJ's discussion here was inadequate.

Paragraph 12 questions how the ALJ could have arrived at a less restrictive RFC in her second decision than she reached in her first decision which was reversed, considering "the Defendant's own Appeals Council has pointed out substantial evidence both medical and subjective which would suggest that Plaintiff is in fact further limited than was found by the ALJ in the May 17, 2019 unfavorable decision." Br. at 18.

Plaintiff appears to argue that the procedural history of this case establishes the merits of his current claim, as if the only possible outcomes on remand were a favorable decision or, at a minimum, a more restrictive RFC. The argument is misplaced. The prior presiding Magistrate

Judge did not issue a merits decision.[4]  Doc. 18, 19-CV-1162.  The matter was remanded pursuant to stipulation which stated nothing about the required factual and legal considerations on remand. Even assuming the ALJ failed to comply with the Appeal's Council's directive on remand,  neither the Appeal's Council's directive to the ALJ on remand, nor the ALJ's compliance therewith are at at issue before this Court.  What is at issue is whether substantial evidence supported the ALJ's current decision.  Plaintiff identifies no support for the notion that the ALJ was precluded from reaching a less restrictive RFC on remand than she reached in the first decision.

Paragraphs 13 and 14 argue as follows: 1) the ALJ''s first hypothetical to the VE at the administrative hearing included a sit/stand option, 2) the VE identified jobs numbering no more than 3,000, 3) counsel contended at the hearing that 3,000 jobs did not constitute sufficient numbers in the national economy as required by law, and  4) that this "caused this Administrative Law Judge to in fact change her residual functional capacity to a unlimited range of sedentary work activity . . ."  Br. at 18–19.  The first hypothetical was just that, a hypothetical.[5]  Even assuming the first hypothetical is a representation of the ALJ's anticipated RFC, and she only deviated therefrom upon discovering the lack of sufficiently numerous sedentary jobs in the national economy with a sit/stand option, that would not establish harmful error.  The question would still remain whether the RFC was supported, or whether the evidence of record would require the inclusion of a sit/stand option.  Yet Plaintiff's brief does not argue that a sit/stand option was warranted or why it was warranted.  Rather, Plaintiff's central contention revolves around the requirement that he elevate

---

[4] Although Plaintiff filed a Notice of Related case at the outset of this appeal, importantly the prior presiding judge issued no merits decision resolving common questions of law or fact, nor was there any occasion to gain familiarity the case as the matter was never fully briefed and did not become ripe for review. The matter was remanded pursuant to stipulation following Plaintiff's opening brief.

[5] Practically speaking, the ALJ's first hypothetical to the VE often does mirror the ultimate RFC set forth in the ALJ's decision.  But this by no means a legal requirement.  Plaintiff appears to suggest that the ALJ was perhaps outcome motivated, choosing the path of least resistance that would result in a finding of nondurability rather than focusing on what limitations were supported by the record.  But only the latter issue is under review here, namely what limitations were supported by the record.

his legs 10 minutes per hour.

The 15th and final paragraph of Plaintiff's analysis simply repeats his conclusion that the RFC was unsupported.

Although Plaintiff provided no analysis of the ALJ's pertinent discussion, the Court has independently reviewed the same and finds that the ALJ provided a detailed and thoroughly reasoned explanation for rejecting Plaintiff's physician's opinion concerning leg elevation and for rejecting Plaintiff's testimony concerning the same.

The ALJ acknowledged Plaintiff's pertinent testimony at the outset of her RFC analysis. *See* AR 1244 ("He testified that he is unable to work because of ankle injuries and his feet. He testified that his ankles swell such that he has to elevate them above his hips. He testified that his ankles are almost always swollen."). The ALJ then explained that the testimony was not entirely consistent with the medical evidence and other evidence "for the reasons explained in this decision." AR 1244. The ALJ explained that, although she considered the entire record, the inquiry "is limited as the claimant must establish disability on or before the date last insured of December 31, 2016 in order to be entitled to a period of disability and disability insurance benefits, while the claimant himself only alleges an onset date of January 1, 2016, thereby making much of the evidence of limited probative value as it is from significantly after the date last insured." AR 1244.

The ALJ then provided a detailed summary of the medical evidence concerning Plaintiff's ankle impairments, including X-ray, MRI and 13 physical examinations from 2016, such as: 1) a January 25 examination noting tenderness but normal range of motion with no swelling;[6] 2) February 1 treatment notes recommending only over the counter medications, ice and exercise; 3)

---

[6] The ALJ's decision stated normal range of motion "with swelling" which was apparently a typo as the ALJ provided a pin citation to Ex B2f at 4, corresponding to page 369 of the record, which contains the January 25, 2016 treatment notes in question in which the physician noted with respect to bilateral feet: "There is tenderness. There is full range of motion, *no swelling, no crepitus* and no deformity." AR 369 (emphasis added).

February 29 treatment notes noting normal range of motion and recommendation for soaking, stretching, night bracing, and shoe inserts; 4) an April 17 examination noting normal range of motion with tenderness bilaterally; 5) an April 26 podiatry consultation noting mild edema on the right and trace edema on the left; 6) a July 6 examination noting minimal bilateral ankle tenderness with full range of motion; 7) August 29 podiatry evaluation reflecting conservative treatment recommendations limited to physical therapy, ankle bracing, and supportive shoes; and 8) a December 6 examination noting very tense and stiff ankles, but a recommendation "to have retraining for sedentary employment." AR 1244–45.

The medical evidence did reflect ankle impairments, associated limitations on examination, and associated imaging findings. To that end, the ALJ did identify severe impairments of ankle sprains, bilateral foot bursitis, and bilateral plantar fasciitis and limited Plaintiff to sedentary work. AR 1239. However, the records did not support the argument that Plaintiff must elevate his feet above waist level 10 minutes per hour to alleviate pain, swelling or edema. As set forth in the paragraph above, the physical examinations contained at most mixed findings as to tenderness, mostly normal findings as to range of motion, and largely negative findings as to swelling and edema save for one instance of mild edema on the right and trace edema on the left. His treating providers identified various treatment recommendations including soaking, stretching, ice, bracing, physical therapy, supportive shoes, and over-the counter medications. With the exception of Dr. Leavitt's work status report, discussed below, and one treatment note, his treating providers' recommendations did not include elevating his feet 10 minutes per hour.

As for the one pertinent treatment note from a visit with Dr. Leavitt, it indicates "elevate feet 10 min per hour prn" or "pro re nata," meaning as the need arises. AR 411. This is not tantamount to a recommendation that he do so hourly throughout the workday in perpetuity. Dr. Leavitt did opine in a work status report than Plaintiff would have such a limitation for

13

approximately 2 months which, as discussed below, the ALJ appropriately rejected.

Here, the ALJ specifically tied the findings together in an analytical paragraph following the summary and explained how those findings support her RFC for sedentary work.

> Such evidence shows that following the initiation of conservative treatment, including use of ice and heat, physical therapy, and braces, the claimant had improvements in his lower extremity functional abilities (See, Exhibit B2F/117, 126, 136, 155). Only after the claimant returned to part-time work requiring standing four hours per day, which exceeds the limitations contained in a sedentary position, did the claimant have worsening of his symptoms (See, Exhibit B2F/170, 172). Despite such worsening, conservative treatment continued to be provided (See, Exhibit B2F/173). Such evidence indicates that the claimant would be able to perform a full range of sedentary work. Indeed, beyond the evidence discussed above that suggests the claimant could perform sedentary work, his own treatment provider recommended that he be retrained for sedentary work, which suggests that he was capable of such work (Ex. B2F/184). The claimant himself confirms such statement as, by letter dated December 13, 2016, the claimant requested to be returned to work with the modified duty statement submitted by his treatment provider that he could perform sedentary work with additional limitations (Ex. B1F/5).

AR 1246.

The ALJ also provided a specific explanation for rejecting Dr. Leavitt's opinion that Plaintiff must elevate his legs 10 minutes per hour, in which the ALJ noted: 1) that such a limitation was unsupported by the physician's own examination, and 2) that the evidence does not show that leg elevation alleviated his symptoms.

> I give little weight to the additional limitations opined by Dr. Leavitt, *including that the claimant had to elevate his feet ten minutes per hour*, required an added five minute break for every hour of standing, could stand/walk for no more than 15 cumulative minutes per hour, occasionally bend, never torso/spine twist, never climb ladders, and never use scaffolds/work at height (Ex. B2F/46, 173; B8F/9, 12, 14). These opinions are not supported by the examinations of the claimant by Dr. Leavitt and appear to be based upon the claimant's subjective complaints. For example, *the limitation that the claimant had to elevate his feet ten minutes per hour on April 26, 2016, was not supported by or explained within the examination of the claimant conducted the same day* (Ex. B2F/44-45). *Additionally, the evidence does not show that Dr. Leavitt observed that the claimant had improvements in his symptoms following elevation of his feet at that time* (Ex. B2F/44-45). Instead, the physical examination showed that the claimant had tenderness to palpation in the ankle and pain with ankle range of motion testing, but a full range of motion, while MRIs of the claimant's ankles was recommended (Ex. B2F/45-46).

AR 1248 (emphasis added).

The ALJ cited at least one exemplary examination in which Dr. Leavitt noted only mild edema on the right and trace edema on the left, which would not justify leg elevation 10 minutes per hour. AR 1248 (citing B2F at 44-45 AR 409-410).

The only specific citations to the record in Plaintiff's 4 page argument were : 1) the VE's testimony that elevating his legs 10 minutes per hour would preclude available work, 2) records establishing the existence of ankle impairments which the ALJ did acknowledge and found severe, and 3) his physician's recommendation that he elevate his legs 10 minutes per hour, which was unsupported by her own examination and not otherwise explained. Br. at 15-19 (citing AR 78–79, 680–84, 691, 727).

### VI.    Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff John Joseph Simmons.

IT IS SO ORDERED.

Dated:  **April 15, 2022**           **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE